# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAMARA DROUBI<br>3446 Connecticut Ave., NW, Unit 501<br>Washington, DC 20008<br><br>      *Plaintiff*,<br><br>      v.<br><br>ACCESSLEX INSTITUTE<br>d/b/a ACCESS GROUP, INC.<br>PLEASE SERVE: Christopher Chapman,<br>President and CEO<br>10 North High St., Suite 400<br>West Chester, PA 19380<br><br>THOMAS A. MAURO<br>1776 K St., NW, 2nd Floor<br>Washington, DC 20006<br><br>      and<br><br>MAURO LAW OFFICES, P.C.<br>PLEASE SERVE: Thomas Mauro,<br>Principal<br>1776 K St., NW, 2nd Floor<br>Washington, DC 20006<br><br>      *Defendants*. | Civil Action No.1:19-cv-147 |

## **COMPLAINT FOR CIVIL PENALTIES AND OTHER RELIEF**

Plaintiff, Tamara Droubi, through counsel, for her Complaint alleges as follows:

## **JURISDICTION AND VENUE**

1. This is an action arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and the District of Columbia Debt Collection Law ("DCDCL"), D.C. Code § 28-3814 *et seq.*, to obtain monetary civil penalties and other relief for violations of the FDCPA

1

and DCDCL by AccessLex Institute d/b/a Access Group, Thomas A. Mauro and Mauro Law Offices, P.C.

2. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692 *et seq*.

3. Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391.

## PLAINTIFF

4. Plaintiff is a resident of the District of Columbia, a graduate of the Catholic University of America, Columbus School of Law, and a lawyer practicing in the District of Columbia. At all times relevant herein, Plaintiff has been a consumer protected by the FDCPA.

## DEFENDANTS

5. Defendant AccessLex Institute d/b/a Access Group ("Access") was a student loan promoter for postsecondary education, and at all times relevant to the disputed actions described herein, a debt collector as defined in the FDCPA, 15 U.S.C. § 1692a(6), and the DCDCL, D.C. Code § 28-3814(b)(2).

6. Defendant Thomas A. Mauro, Esquire is a lawyer practicing in the District of Columbia. He is the principal of Defendant Mauro Law Offices, P.C., located at 1776 K Street, N.W., Second Floor, Washington, DC, 20006 (collectively, "Mauro"), and according to the firm's website, has responsibility for all the firm's clients. At all times relevant to the disputed actions described herein, Mauro has served as the agent of Defendant Access, and is a debt collector as defined in the FDCPA, 15 U.S.C. § 1692a(6).

## FACTUAL BACKGROUND

7. Plaintiff financed her legal education by taking out three student loans ("Loans") from the National City Bank of Cleveland Ohio ("Bank").

2

8. From 2012 to August 2015, Plaintiff made regular, ongoing monthly payments on the Loans.

9. On or about August 2015, Access advised Plaintiff that her monthly payments would be increasing, essentially doubling her collective, monthly student loan payments (federal and private).  Experiencing economic difficulty, Plaintiff contacted Access to work out a forbearance plan or a reduced payment.  She was informed neither was possible.

10. According to Plaintiff's credit reports, to the extent Access had any valid claim over the Loans, they were "charged off" on or about February 2016 and/or March 2016.  Beginning on or about October 2016, the Loans became listed as "in collection" by a third party(s).

11. In a letter dated February 2, 2018, Defendant Access, through its agent, Defendant Mauro, contacted Plaintiff, indicating that it was attempting to collect on the Loans ("Debt").  Ex. A.  This letter indicated that Plaintiff could contest the validity or any portion of the Debt within thirty (30) days.  *Id.*  It further provided that Plaintiff could request verification of the Debt, seek the name and address of the original creditor, and propose a repayment plan.  *Id.*

12. Plaintiff timely responded by letter dated February 24, 2018.  Ex. B.  Plaintiff's letter disputed the Debt, and requested verification of the Debt under the FDCPA, *e.g.*, the name and address of the original creditor, evidence of any assignment, documents evidencing her signature, and records evidencing the payment history (collectively, "Verification Documents").  *Id.* at 1.  Plaintiff also indicated her willingness to resolve the matter.  *See id.* at 2.  Plaintiff further requested that Defendants suspend all collection activities on the Debt pending receipt of the Verification Documents, and, to the extent their collections attempts had been reported to any credit reporting agency, that Defendants report the Debt as disputed.  *Id.*

13. Soon thereafter, Access, through its agent, Mauro, took affirmative steps to frustrate and thwart Plaintiff's attempts to obtain the Verification Documents.  For example, in a letter dated March 7, 2018, Access demanded an original signature from Plaintiff to "confirm" her identity prior to the release of the Verification Documents, even though no such requirement exists in the FDCPA.  Ex. C.

14. In a letter dated June 11, 2018, Access, through its agent, Mauro, advised Plaintiff that it could not authenticate her identity to allow for release of the Verification Documents, but concurrently, it believed Plaintiff to be the "correct" party in legal action regarding the Debt. Ex. D at 1.  Accordingly, Defendants, advised that they would be moving forward with pursuing litigation in the Superior Court of the District of Columbia against Plaintiff.  *Id.*  As "one last opportunity," Defendants required Plaintiff to travel to Mauro's law office to review the Verification Documents.  *Id.*  Providing her with an arbitrary 2-week period to review the Verification Documents at Mauro's, Defendant also instructed Plaintiff that she would need to present a valid government issued form of identification, *i.e.*, a driver's license, state ID, or passport, to confirm her identity as a condition for viewing the Verification Documents.  *Id.* at 1-2.

15. Plaintiff pointed out the failure of Access, through Mauro, to comply with the requirements under the FDCPA by letter dated June 21, 2018.  Ex. E at 1-3.  Reserving all of her legal rights, Plaintiff reiterated that she was disputing the Debt but was willing to resolve the matter.  *Id.* at 4-6.  To that end, Plaintiff again requested a copy of the Verification Documents. *Id.* at 5.

16. More than four months following her initial request for the Verification Documents, Access, through its agent, Mauro, finally produced some documentation regarding the Debt in a

4

letter dated July 6, 2018.  Ex. F.  Said documentation did not comply fully with the FDCPA, nor with Plaintiff's requests for validation of the Debt.  *See generally id.*

17. By letter dated August 3, 2018, Plaintiff continued to dispute the Debt, and requested additional information from Access, through its agent, Mauro, in an ongoing attempt to resolve the dispute.  Ex. G.

18. On or about August 15, 2018, Access, through its agent, Mauro, filed a "Verified Complaint on Account" in the Superior Court of the District of Columbia, Case No. 18 CA 005876 C, alleging that Access "holds" the Loans and Plaintiff had neglected and refused to pay the Debt ("Access Complaint").  Ex. U.

19. At the time Defendants filed the Access Complaint, the Debt was in dispute.

20. In its complaint, Access claimed that the Bank had assigned the Loans to Access.  Significantly, however, Access, through its agent, Mauro, failed to submit copies of the relevant assignments alongside the exhibits it submitted with the Access Complaint.  *Id.* at ¶¶ 8, 14, 20.  In addition to showing various errata—with language missing between certain paragraphs—the Access Complaint claimed $16,063.60 in attorney's fees.  *Id.* at 5-6.

21. In a letter dated August 17, 2018, Access, through its agent, Mauro, indicated it was willing to resolve the matter with Plaintiff, but advised that Defendants had "no choice" but to commence litigation in order to "preserve the status quo."  Ex. H at 1.  No explanation was provided as to why a lawsuit was necessary to "preserve the status quo"—*e.g.*, a forthcoming statute of limitations—nor did Access, through Defendant Mauro, seek Plaintiff's assistance to "preserve the status quo" without resort to litigation.  Defendants did advise that it would refrain from serving the complaint for ninety (90) days in order to resolve the matter with Plaintiff.  *Id.*

22. Defendants did not immediately serve Plaintiff with the Access Complaint.

5

23. Plaintiff retained counsel immediately thereafter to assist her in resolving the dispute with Access.  Through counsel, Plaintiff learned that Defendants had filed the Access Complaint.

24. Over the ensuing four months, Plaintiff, through her counsel, repeatedly expressed her continued willingness to resolve the matter provided that Access comply with the requirements of the FDCPA, *i.e.*, provide proof (1) of the original notes or agreements for the Loans, (2) the Bank's assignment of the Loans to Access, as referenced in the Access Complaint, and (3) that no further assignment(s) or transfer(s) of the Loans had been made by Access to any third party(s).  *See generally* Ex. I, J.  Plaintiff further requested information to discern the basis for the $16,063.60 claims for in attorney's fees.  Ex. J at 2.

25. During the same time period, Defendants continued to take affirmative steps to frustrate and thwart Plaintiff's attempts to obtain the relevant notes and assignments.  Access, through Defendant Mauro, claimed that there no were notes to the Loans, the Loans had been transferred from the Bank to Access, and Access had not assigned or transferred the Loans to any third party(s).  But, in spite of Plaintiff's requests, Defendants would not and did not produce any documents to support its statements, including, but not limited to, the purported assignments from the Bank to Access.

26. In November 2018, Plaintiff obtained copies of two of her credit reports, each of which indicated that by Fall of 2016, Access may have assigned or transferred any right it purportedly had in the Debt to a third party(s).[1]  *See* Ex. L.

27. On or about November 8, 2018, Plaintiff's counsel submitted a letter to Access, through Mauro.  Ex. K.  In it, Plaintiff summarized the unresolved questions about the validity of Access'

---

[1]  The failure of Access to evidence the alleged assignment of the Loans from the Bank to Access demonstrates that no such assignment ever occurred.  In turn, this means that Access did not have the authority to assign or transfer the Loans to any third party(s).

6

legal standing to pursue the Debt. *Id.* at 1-2.  Plaintiff also cited the information learned from the credit reports.  *See id.* at 2.  In the face of the information in the credit reports, as well as the continuing failure of Defendants to produce any notes or assignments regarding the Debt, <u>yet again</u>, Plaintiff requested that Defendants provide the necessary paperwork to verification its claim to the Debt or dismiss the Access Complaint.  *Id.* at 1-2.

28. On November 15, 2018, Access, through its agent, Mauro, filed a "verified" amendment to the Access Complaint ("Amended Access Complaint").  Ex. V.  In it, Access sought to correct deficiencies that Plaintiff had pointed out to Defendant Mauro, *e.g.*, that the claim arose from loan agreements, and identifying the dates the Bank allegedly assigned the Loans to Access.  *Id.* at ¶¶ 8, 15, 22.  Still again, Access failed to include proof of the purported assignments.  *See generally id.*, exhibits.  Access also revised its claim for attorney's fees, from $16,063.60 to "reasonable attorney's fees."  *Id.* at ¶ 28.  Strikingly, Access included a Verification Separate from the Complaint dated July 3, 2018.  *Compare* Ex. U (August 15, 2018 Access Complaint: verification dated August 13, 2018), *with* Ex V (November 15, 2018 Amended Access Complaint: verification dated July 3, 2018).

29. At the time Defendants filed the Amended Access Complaint, the Debt was disputed.  Defendants had yet to provide Plaintiff with the requisite Verification Documents, including, but not limited to, any relevant notes and the alleged assignments of the Loans from the Bank to Access—not even after being told that Plaintiff's credit reports showed the Debt as "in collection" by a party(s) other than Access.

30. The same day, on November 15, 2018, Access, through Defendant Mauro, sent Plaintiff a "final settlement offer."  Ex. N.  In it, Defendants advised they would not engage in any informal document production, and directed Plaintiff to accept the settlement terms proposed.  *Id.* at 1.

Alternatively, Defendants directed Plaintiff to file an answer in response to the "complaint" or be prepared for service of the summons and complaint. *Id.* at 2. No reference was made by Defendant regarding the Amended Access Complaint Defendants had filed with the D.C. Superior Court. *See id.* at 1-2.

31. On November 19, 2018, Plaintiff, through counsel, expressed her continued willingness to resolve the dispute, and in fact, agreed to Defendants' proposed payment terms, provided that Defendants comply with the requirements of the FDCPA, *e.g.*, provide proof of the original notes to and assignments of the Debt. Exs. O and P.

32. In response to a request made on November 20, 2018, Plaintiff voluntarily provided Defendants on November 21, 2018 with relevant portions of her credits reports showing the Debt "in collection" by a party(s) other than Access. *See* Ex. M. The same day, Mauro advised Plaintiff's counsel that Access had provided him with guidelines and proposed language which Defendants believed would be acceptable to Plaintiff, and which Mauro would send to counsel no later than Tuesday, November 27, 2018.

33. On December 14, 2018, Access, through Mauro, sent Plaintiff a draft settlement agreement. *See* Ex. Q. The draft agreement repeated the claim that the Bank had transferred the Loans to Access. *Id.* at 3-4. Likewise, the draft agreement stated that Access had not assigned or transferred the Debt to any third party(s). *Id.* The draft also referenced the Amended Access Complaint. *E.g.*, *id.* at 1.

34. On December 19, 2018, Plaintiff, through counsel, inquired about the reference to the Amended Access Complaint. Exs. R and S. Moreover, counsel advised that certain language in the draft agreement would need to be revised, and, once more, he requested copies of the notes and the assignments. *See id.*

35. On December 20, 2018, Access, through Mauro, emailed Plaintiff's counsel, explaining that the Amended Access Complaint was filed to "clear up" Plaintiff's "misunderstanding" as to the existence of promissory notes in this case. Before asking Access for "authority to provide" Plaintiff with the assignments, Mauro also inquired about the proposed revisions to the draft settlement agreement. Ex. T.

36. The same day, Plaintiff's counsel re-confirmed the importance of the notes and assignments to the proposed settlement. *Id.* Likewise, given the critical nature of the requisite validation documentation, counsel advocated against requiring Plaintiff to incur additional attorney's fees addressing the tangential issue of the settlement agreement until such time as the documentation was finally provided to Plaintiff. *Id.*

37. On January 5, 2019, Defendants served Plaintiff with the Amended Access Complaint.

## **VIOLATIONS OF THE FDCPA**

Harassment, Oppression, or Abuse of Person(s)

38. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 37, above.

39. The FDCPA, 15 U.S.C. § 1692d, prohibits debt collectors from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

40. In numerous instances, through the means described in paragraphs 13-37, in connection with the collection of the Debt, Defendants Access and Mauro, engaged in conduct designed to harass, oppress, or abuse Plaintiff in the collection of the Debt by thwarting Plaintiff's efforts to obtain information and documentation for a disputed debt, for which she had made proper requests under the FDCPA, by:

(i) Requiring that Plaintiff submit an original signature as a condition for providing the Verification Documents where no such requirement exists in the FDCPA;

(ii) Requiring as a condition for providing the Verification Documents that Plaintiff submit an original signature when Defendants knew or reasonably should have known Plaintiff's identity;

(iii) Claiming that the Verification Documents Plaintiff sought were "personal;"

(iv) Requiring that Plaintiff travel to Defendant Mauro's as a condition for allowing Plaintiff to review the Verification Documents;

(v) Requiring that Plaintiff to travel to Defendant Mauro's as a condition for allowing Plaintiff to review the Verification Documents when Defendants knew or reasonably should have known Plaintiff's identity;

(vi) Requiring that Plaintiff provide Defendants with government-issued identification as a condition for allowing Plaintiff to review the Verification Documents at Mauro's law office;

(vii) Requiring that Plaintiff travel to Defendant Mauro's law office as a condition for allowing Plaintiff to review the Verification Documents when Defendants knew or reasonably should have known Plaintiff's identity;

(viii) Seeking attorney's fees in the amount of $16,063.60 in the Access Complaint without showing this right was expressly allowed by actual agreement(s) between Plaintiff and Access that provides Access with the right to collect on the Debt;

(ix) Failing to provide the basis for Defendants' claim for $16,063.60 in attorney's fees after receiving a related written request from Plaintiff's counsel;

(x) Threatening Plaintiff with litigation at a time when the Debt was disputed, and when Defendants knowingly and willfully had failed to provide the Verification Documents;

(xi) Commencing litigation against Plaintiff at a time when the Debt was disputed and When Defendants had knowingly and willfully failed to provide the Verification Documents; and

(xii) Failing to provide the information and documentation requested by Plaintiff, as required under the FDCPA, to validate Defendant Access' claim to the Debt, *e.g.*, the notes and assignments from the Bank.

41. The acts and practices alleged in Paragraph 40 constitute violations of the FDCPA, 15

U.S. C. § 1692d.

### False or Misleading Representations

42. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 41, above.

43. The FDCPA, 18 U.S.C. § 1692e, prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt. In particular, 15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt, whereas 15 U.S.C. § 1692e(10) prohibits using false representations or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

44. In numerous instances, through the means described in paragraphs 13-37, in connection with the collection of the Debt, Defendants Access and Mauro, directly or indirectly, used false, deceptive, or misleading representations or means, in violation of FDCPA, 15 U.S.C. § 1692e, including, but not limited to, the following:

  (i) In numerous instances, Defendants Access and Mauro, directly or indirectly, have used false representations concerning the character, amount, or legal status of the Debt, including but not limited to their request for substantial attorney's fees, in violation of 15 U.S.C. § 1692e(2)(A); and

  (ii) In numerous instances, Defendants Access and Mauro, directly or indirectly, have used false representations or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10).

45. The acts and practices alleged in Paragraph 44 constitute violations of the FDCPA, 15 U.S. C. § 1692e.

### Failure to Cease Collection Efforts

46. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 45, above.

47. The FDCPA, 18 U.S.C. § 1692g, provides, *inter alia*, that if a consumer notifies a debt collector in writing, within thirty days of the consumer's receipt of the initial communication from the debt collector, that the debt is disputed, the debt collector shall cease collection of the debt until the debt collector obtains and provides verification of the debt to the consumer.

48. In numerous instances, through the means described in paragraphs 13-37, in connection with the collection of the Debt, after Plaintiff notified Defendants in writing within the 30-day period described in the FDCPA, 15 U.S.C. § 1692g(a), that the Debt was disputed, Defendants failed to obtain and provide verification of the Debt to Plaintiff, and have continued to attempt to collect on the Debt at a time when the Debt was disputed, by:

- (i) At all relevant times, failing to timely respond to Plaintiff's requests for verification documents;

- (ii) Engaging in conduct designed to harass, oppress, or abuse Plaintiff in an attempt to collect on the Debt;

- (iii) Failing to provide Plaintiff with the address of the original creditor, despite Plaintiff's repeated requests for this information;

- (iv) Failing to provide the underlying note(s) evidencing the Loans, despite Plaintiff's repeated requests for this documentation;

- (v) Failing to provide the alleged assignment(s) of the Debt, despite Plaintiff's repeated requests for this documentation;

- (vi) Failing to cease collection effort, including, but not limited to, filing the Access Complaint and Amended Access Complaint; and

- (vii) Failing to provide full and meaningful disclosure, as required by the FDCPA, in response to Plaintiff's requests.

49. The acts and practices alleged in paragraph 48 constitute violations of the FDCPA, 15 U.S.C. § 1692g.

**VIOLATIONS OF THE DCDCL**

Threat, Coercion, or Attempt to Coerce by Means of False Accusations

50. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 49, above.

51. The DCDCL, D.C. Code § 28-3814(c)(3), provides that no debt collector shall collect or attempt to collect any money alleged to be due and owing by means of any threat, coercion, or attempt to coerce by means of false accusations made to another person, including any credit reporting agency, that a consumer has not paid a just debt, or threat to so make such false accusations.

52. In various instances, through the means described in paragraphs 13-37, in connection with the collection of the Debt, Defendants Access and Mauro, willfully engaged in conduct designed to threaten, coerce or attempt, in violation of the DCDCL, D.C. Code § 28-3814(c)(3), to coerce Plaintiff in the collection of the Debt by:

(i) Filing the Access Complaint at a time when the Debt was in dispute, and claiming that Plaintiff had improperly neglected and refused to pay the Debt; and

(ii) Filing the Amended Access Complaint at a time when the Debt was in dispute, and claiming that Plaintiff had improperly neglected and refused to pay the Debt.

53. The acts and practices alleged in paragraph 52 constitute willful violations of the DCDCL, D.C. Code § 28-3814(c)(3).

Unreasonable Publication of Information Regarding the Debt

54. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 53, above.

55. The DCDCL, D.C. Code § 28-3814(e)(4), provides that no debt collector shall unreasonably publicize information relating to any alleged indebtedness or debtor by means of any form of communication to the consumer, which ordinarily may be seen by any other persons, that displays or conveys any information about the alleged claim other than the name, address, and phone number of the creditor or debt collector.

56. In numerous instances, through the means described in paragraphs 13-37, In connection with the collection of the Debt, Defendants Access and Mauro, willfully and unreasonably publicized information, in violation of DCDCL, D.C. Code § 28-3814(e)(4), regarding the allegedly improper refusal and neglect by Plaintiff on the Debt by

    (i) Filing the Access Complaint at a time when the Debt was in dispute, and claiming that Plaintiff had improperly neglected and refused to pay the Debt; and

    (ii) Filing the Amended Access Complaint at a time when the Debt was in dispute, and claiming that Plaintiff had improperly neglected and refused to pay the Debt.

57. The acts and practices alleged in paragraph 56 constitute willful violations of the DCDCL, D.C. Code § 28-3814(e)(4).

Fraudulent, Deceptive, or Misleading Representation

58. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 57, above.

59. The DCDCL, D.C. Code § 28-3814(f), provides *inter alia* that no debt collector shall use any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers.  Specifically, § 28-3814(f)(4) prohibits the failure to clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, or to whom the claim is owed, at the time of making any demand for money; § 28-3814(f)(5) prohibits any false representation or implication of the character, extent, or amount of a claim against a consumer, or of its status in any legal proceeding; and § 28-3814(f)(8) prohibits any representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation.

60. In numerous instances, through the means described in paragraphs 13-37, Defendants Access and Mauro, willfully engaged in fraudulent, deceptive, or misleading representation or means to collect or attempt to collect on the Debt, by:

- (i) Repeated failure to provide the information and documentation requested by Plaintiff, as required under the FDCPA, to validate Defendant Access' claim to the Debt, *e.g.*, the notes and assignments from the Bank;

- (ii) Repeated failure to provide proof of the assignment of the Loans by the Bank to Access, as claimed in Defendants' communications to Plaintiff, the Access Complaint and the Amended Assess Complaint;

- (iii) Filing the Access Complaint at a time when the Debt was in dispute, and claiming that Plaintiff had improperly neglected and refused to pay the Debt;

- (iv) Seeking attorney's fees in the amount of $16,063.60 in the Access Complaint without showing this right was expressly allowed by an actual agreement(s) between Plaintiff and Access that provides Access with the right to collect on the Debt;

- (v) Filing the Amended Access Complaint at a time when the Debt was in dispute, and claiming that Plaintiff had improperly neglected and refused to pay the Debt; and

- (vi) Seeking "reasonable" attorney's fees in the Amended Access Complaint without showing this right was expressly allowed by an actual agreement(s) between Plaintiff and Access that provides Access with the right to collect on the Debt.

61. The acts and practices alleged in paragraph 60 constitute willful violations of the DCDCL, D.C. Code § 28-3814(f).

Unfair or Unconscionable Means to Collect Debt Collector's Fee

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 61, above.

63. The DCDCL, D.C. Code § 28-3814(g)(3), provides that no debt collector shall use unfair or unconscionable means to collect or attempt to collect from the consumer all or any part of the debt collector's fee or charge for services rendered.

64. In numerous instances, through the means described in paragraphs 13-37, Defendants Access and Mauro, willfully engaged in unfair or unconscionable means to collect or attempt to

collect on all of part of the attorney's fees and costs allegedly incurred in connection with the Debt, by:

    (i) Seeking attorney's fees in the amount of $16,063.60 in the Access Complaint without showing this right was expressly allowed by an actual agreement(s) between Plaintiff and Access that provides Access with the right to collect on the Debt;

    (ii) Failing to provide the basis for Defendants' claim for $16,063.60 in attorney's fees after receiving a related written request from Plaintiff's counsel; and

    (iii) Seeking "reasonable" attorney's fees in the Amended Access Complaint without showing this right was expressly allowed by an actual agreement(s) between Plaintiff and Access that provides Access with the right to collect on the Debt.

65. The acts and practices alleged in paragraph 64 constitute willful violations of the DCDCL, D.C. Code § 28-3814(f)

## **PENALTIES**

66. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 65, above.

67. Defendants violated the FDCPA, with actual knowledge as described above.  Under the same facts, Defendants' actions were willful and constitute a violation of the DCDCL.

68. Therefore, pursuant to the FDCPA, 15 U.S.C. § 1692k, the Court is authorized to award $1,000 in statutory damages for these violations.

69. Under the FDCPA, 15 U.S.C. § 1692k, and the DCDCL, D.C. Code § 28-3814(j)(1), the Court is further authorized to award compensatory damages, including, but not limited to, reasonable attorney's fees and costs, against Defendants.

70. Additionally, the DCDCL, D.C. Code § 28-3814(j)(2), authorizes the Court to award punitive damages against Defendants.

## **INJUNCTIVE RELIEF**

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 70, above.

72. The Court is authorized under its equitable powers to enjoin Defendants from their ongoing FDCPA and DCDCL violations.

73. As demonstrated in the preceding paragraphs, Defendants violated the FDCPA and DCDCL, and an injunction is necessary to enjoin Defendants from continuing to pursue their invalid and harassing collection efforts against Plaintiff.  Absent injunctive relief, Plaintiff will suffer irreparable harm.  And, as Defendants have violated the law in their collection efforts, the public interest favors the grant of injunctive relief.

## PRAYER FOR RELIEF

74. The FDCPA provides for actual and statutory damages for violations of its provisions, including the award of attorney's fees.  Likewise, the DCDCL provides for actual damages for the willful violations of its provisions, including the award of attorney's fees, as well as for punitive damages.  Plaintiff maintains that Defendants Access and Mauro have violated the FDCPA and DCDCL with respect to their actions against her, and Plaintiff is entitled to the requisite damages.  Further, the Court's equitable powers authorize it to enjoy Defendants from their ongoing violations of the FDCPA and DCDCL.

WHEREFORE, Plaintiff Tamara Droubi respectfully requests that this Court enter judgment providing Plaintiff with following relief:

A.  A finding that Access, and its agent, Mauro, violated the FDCPA and DCDCL;

B.  A $1,000 statutory damages award, pursuant to 15 U.S.C. § 1692k, against Defendants;

C.  An award of compensatory damages in an amount to be determined at a later date, pursuant to the FDCPA, 15 U.S.C. § 1692k, and the DCDCL, D.C. Code § 28-3814(j)(1), including reasonable attorney's fees and costs, against Defendants;

D.  An award of punitive damages against Defendants in an amount deemed appropriate by the Court pursuant to DCDCL, D.C. Code § 28-3814(j)(2).

E.  A permanent injunction pursuant to the Court's equitable powers requiring Defendants to cease and desist all collections efforts on the Debt.

F.  For such further relief the Court deems just and proper.

January 22, 2019                                  Respectfully submitted,

/s/Joseph M. Goldberg
Joseph M. Goldberg, No. 337766
Attorney for Plaintiff
1115 Massachusetts Ave., NW
Washington, DC 20005
(202) 638-9606 (phone)
ammngoldva@aol.com

*Attorney for Plaintiff Tamara Droubi*